UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACK ALLAN WALTERS, JR.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00020 EAW

## <u>INTRODUCTION</u>

        Represented by counsel, Plaintiff Jack Allan Walters, Jr. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, Plaintiff's motion (Dkt. 9) is granted and the Commissioner's motion (Dkt. 16) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on February 2, 2015.  (Dkt. 7 at 14, 80).[1]  In his application, Plaintiff alleged disability beginning April 26, 2009, due to the following impairments: major depression; psoriasis; psoriatic arthritis; osteo arthritis; rheumatoid arthritis; pain; alcohol abuse; osteolysis; abnormal liver function; and mood disorder.  (*Id.* at 14, 81-82).  Plaintiff's application was initially denied on May 27, 2015.  (*Id.* at 14, 92-96).  At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") David J. Begley on October 31, 2017.  (*Id.* at 14, 39-79).  Plaintiff appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia.  (*Id.*).  On February 14, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 11-23).  Plaintiff requested Appeals Council review; his request was denied on November 6, 2018, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-7).  This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I.      **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015.  (Dkt. 7 at 16).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from his alleged onset date of April 26, 2009, through December 31, 2015, the date last insured.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of psoriatic arthritis, osteoarthritis, and depression.  (*Id.* at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*.).  The ALJ particularly considered the criteria of Listings 14.09 and 12.04 in reaching his conclusion.  (*Id.* at 17-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff:

> cannot climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme heat and cold, humidity, and wetness; must avoid slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames; and can do simple, routine, repetitive tasks.

(*Id.* at 18-19).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 21).

- 5 -

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of fast food worker, storage facility rental clerk, and housekeeper.  (*Id.* at 22).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 23).

## II.    Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ erred in assessing Plaintiff's RFC without relying on medical opinion evidence, as he failed to assign controlling weight to any medical opinion; (2) the ALJ erred by assigning controlling weight to the opinion of Susan Santarpia, Ph.D., the consultative examiner, because her opinion was not consistent with the record and not supported by substantial evidence; and (3) the ALJ erroneously applied the five-day rule to ignore an opinion offered by Plaintiff's treating physician, Michael Pusatier, D.O.  (Dkt. 9-1 at 1).  For the reasons set forth below, the Court finds that the ALJ erred by rejecting the opinion evidence offered by Dr. Pusatier, and this error necessitates remand for further administrative proceedings.

### A.    The ALJ's Application of the Five-Day Rule

Plaintiff contends that the ALJ erred in his application of the five-day rule as it pertains to opinion evidence offered by Dr. Pusatier following the administrative hearing but before the ALJ issued his written determination denying benefits.  (Dkt. 9-1 at 23).  Plaintiff argues that the ALJ should have admitted this evidence because he informed the

ALJ of the missing evidence prior to the hearing, the evidence at issue was not completed by Dr. Pusatier until after the administrative hearing and therefore Plaintiff could not have submitted it before the hearing, and the ALJ had an independent obligation to develop the record to obtain a medical opinion.  (*See* Dkt. 9-1 at 25-26 & Dkt. 17 at 5).  In response, Defendant contends that Dr. Pusatier's opinion "fails to credibly demonstrate additional limitations," and the ALJ properly rejected the opinion pursuant to the five-day rule, because Plaintiff failed to demonstrate that an exception to that rule applies.  (Dkt. 16-1 at 6-12).

The regulation at issue ("the five-day rule"), found at 20 C.F.R. § 404.935, states:

(a) When you submit your request for hearing, you should also submit information or evidence as required by § 404.1512 or any summary of the evidence to the administrative law judge.  *Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing*.  If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

(b) If you have evidence required under § 404.1512 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or

submitting the evidence earlier.  Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause; or

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

See 20 C.F.R. § 404.935 (emphasis added).

On October 3, 2017, Plaintiff's counsel wrote to the ALJ to inform him that her office "ha[d] been seeking information from the claimant regarding material evidence." (Dkt. 7 at 269).  The letter further advised the ALJ to "[p]lease take notice" that this evidence was presumed to be material to Plaintiff's case, and that counsel was further requesting (1) from University Orthopaedic Services, records from between September 3, 2014 to the present, and (2) from the Buffalo Medical Group, medical records from between April 29, 2017 to the present, as well as a "questionnaire."  (Id.).  The letter also noted that Plaintiff's counsel "presume[d] that this notice satisfies the requirements of . . . 20 C.F.R. §§ 404.435(a) and 416.1435(a)."[2]  (Id.).

The administrative hearing was held on October 31, 2017.  (Dkt. 7 at 39).  At the hearing, Plaintiff's counsel informed the ALJ that "[w]e did get in the Buffalo Medical

---

[2]     Plaintiff's citation to sections "404.435(a)" and "416.1435(a)" in the October 3, 2017 letter contains a typographical error.  The citation to section "404.435(a)" should read section "404.935(a)," which is the parallel section to 416.1435(a).

Group records and there was no further information from University Orthopaedic Services." (*Id*. at 42). Plaintiff's counsel also stated that she did not believe any evidence was outstanding (*id*. at 42-43); however, the status of the missing questionnaire was not discussed.

Following the administrative hearing but before the ALJ issued his written determination, Plaintiff submitted additional evidence to the ALJ (*id*. at 14), including (1) evidence submitted on November 13, 2017, which consisted of progress notes from the Buffalo Medical Group for treatment Plaintiff received in 2016 and 2017 (*id*. at 686-98), and (2) evidence submitted on November 17, 2017, which was the November 10, 2017 questionnaire completed by Dr. Pusatier (*id*. at 33-38).

Dr. Pusatier has been Plaintiff's primary care physician since 2002. (*Id*. at 34). In the questionnaire, he noted that Plaintiff experienced reduced range of motion, joint deformity and instability, weight change, tenderness, abnormal gait, and positive straight leg raise test. (*Id*.). Dr. Pusatier opined that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, and that Plaintiff's pain was frequently severe enough to interfere with his attention and concentration. (*Id*. at 35). Dr. Pusatier identified depression and anxiety as psychological conditions affecting Plaintiff's pain, and explained that Plaintiff would have difficulty maintaining a low-stress job. (*Id*.). Dr. Pusatier opined that as a result of Plaintiff's impairments, he had marked limitations for functioning in a competitive work situation. (*Id*.). Regarding Plaintiff's physical limitations, Dr. Pusatier opined that Plaintiff: can walk only one city block without rest or severe pain; needs to sit for 20 minutes before getting up; can stand for 15 minutes before

needing to sit down or walk around; can sit and stand/walk for less than two hours during the workday; and needs to include periods of walking around during the workday, requires a job that would permit him to shift positions at will, and needs to take unscheduled breaks during the workday. (*Id*. at 36-37). Dr. Pusatier also noted that Plaintiff would need a cane or other assistive device when engaging in occasional walking or standing. (*Id*. at 37). Plaintiff could rarely lift less than 10 pounds, and never lift more than 10 pounds. (*Id*.). Plaintiff could rarely twist, stoop (bend), crouch, or climb stairs, and never climb ladders. (*Id*.). Dr. Pusatier opined that Plaintiff had significant limitations in performing repetitive reaching, handling, or fingering. (*Id*. at 37-38). Finally, Dr. Pusatier opined that Plaintiff's impairments produced "good days" and "bad days," and that he was likely to be absent from work for more than four days per month. (*Id*. at 38). Dr. Pusatier stated that Plaintiff's limitations have been present since at least March 2009. (*Id*.).

The ALJ admitted a portion of the evidence submitted after the administrative hearing. The ALJ admitted the progress notes from the Buffalo Medical Group submitted on November 13, 2017 (Exhibit 21F), but declined to admit the questionnaire from Dr. Pusatier submitted on November 17, 2017. (*Id*. at 14). The ALJ explained his consideration of this evidence:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. I admit some, but not all, of the additional evidence. The claimant submitted evidence on November 13, 2017 for treatment the claimant underwent in 2017. This evidence is allowed in as Exhibit 21F. The claimant later submitted evidence on November 17, 2017 without explanation for this late submission. The evidence does not meet the

requirements for a late submission of evidence, therefore it is not admitted into the record.

(*Id.*).

The ALJ's explanation is problematic because it misconstrues when he became aware that Plaintiff intended on submitting additional evidence, including the questionnaire. Here, Plaintiff's counsel informed the ALJ by letter dated October 3, 2017, that she was waiting to receive medical records and a questionnaire from the Buffalo Medical Group. (*Id.* at 269). In other words, the ALJ was on notice well before the administrative hearing that Plaintiff intended to submit a questionnaire from the Buffalo Medical Group. Plaintiff's counsel informed the ALJ at the hearing that she received additional records from the Buffalo Medical Group, but the status of the questionnaire referenced in Plaintiff's October 3, 2017 letter was not discussed. (*Id.* at 42-43). Then, 17 days after the administrative hearing, Plaintiff submitted the questionnaire completed by Dr. Pusatier.[3]

The ALJ explained that he would not consider the questionnaire because it was submitted "without explanation" and it "di[d] not meet the requirements for a late submission of evidence. . . . ." (*Id.* at 14). The ALJ did not explain why he admitted the evidence at Exhibit 21F – which was submitted only four days prior to Dr. Pusatier's questionnaire – even though that evidence also was submitted after the administrative hearing and without explanation (*see id.* at 686-98 & Dkt. 9-1 at 25). In other words, it is not clear to the Court why the ALJ believed it was proper to admit the progress notes from

---

[3]    The questionnaire submitted by Dr. Pusatier shows that he is affiliated with the Buffalo Medical Group. (*See* Dkt. 7 at 33).

the Buffalo Medical Group, but not Dr. Pusatier's questionnaire.  Indeed, a questionnaire completed by a treating physician would appear to shed more light on Plaintiff's functional limitations than 13 pages of progress notes.

Given the specific facts of this case, remand is appropriate so that the ALJ may consider the opinion evidence offered by Dr. Pusatier.  Plaintiff's counsel wrote to the ALJ on October 3, 2017, and informed him of additional evidence she expected to receive, including a questionnaire from the Buffalo Medical Group.  Accordingly, the ALJ was aware of Plaintiff's intention to submit a questionnaire but failed to inquire about the status of the questionnaire at the time of the hearing.  Although Plaintiff's counsel stated at the administrative hearing that she did not believe any other evidence was outstanding, the ALJ has an independent duty to develop the administrative record and, given he had notice of the questionnaire, the ALJ should have inquired regarding its status.  *See Cancel v. Colvin*, 14-cv-2034 (PKC), 2015 WL 865479, at *5 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [the plaintiff's] counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error.  Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented.").  Then, after receiving the questionnaire – shortly after the hearing but before he issued his determination on Plaintiff's case – the ALJ summarily rejected the questionnaire, without giving a satisfactory reason for this rejection.  The Court notes that the questionnaire completed by Dr. Pusatier is the only opinion in the record from a treating physician, and it speaks directly to Plaintiff's mental and physical functional limitations.  Given these

facts, the ALJ should have admitted the questionnaire submitted by Dr. Pusatier. *See Drogo v. Commissioner*, No. 6:18-CV-6105, 2019 WL 2569599, at *4 (W.D.N.Y. June 21, 2019) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal. . . .  In light of that duty, an ALJ cannot simply choose to disregard evidence that the ALJ knows about – and about which the claimant has informed the ALJ – before the [five-day] deadline.") (internal quotations and citations omitted); *see also Jefferson v. Berryhill*, No. 18-CV-07425(AMD), 2020 WL 1323072, at *3 (E.D.N.Y. Mar. 20. 2020) (Explaining that even if the ALJ did not believe the plaintiff that her mental disability prevented her from providing her medical records in compliance with the five-day rule, in light of an ALJ's duty to develop a complete medical record, he cannot disregard evidence he is aware of before the deadline, and "[t]his obligation includes making reasonable efforts to obtain a report that sets forth the opinion of that treating physician as to the existence, the nature, and severity of the claimed disability.") (internal quotations and citation omitted).

While Defendant identifies several perceived inconsistencies in Dr. Pusatier's opinion (*see* Dkt. 16-1 at 6-7), these articulations are absent from the ALJ's opinion. Defendant's after-the-fact explanation as to why the ALJ could have discounted Dr. Pusatier's opinion cannot serve as a substitute for the ALJ's findings. *See Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's opinion into his RFC); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate

counsel's *post hoc* rationalizations for agency action).  Accordingly, remand of this matter for further proceedings is required.  On remand, the ALJ should consider the November 10, 2017 opinion evidence offered by Dr. Pusatier.  Should the ALJ conclude that Dr. Pusatier's opinion is not entitled to controlling weight, he should adequately explain his reasoning for his decision.

### B.   Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings.

The Commissioner's motion for judgment on the pleadings (Dkt. 16) is denied.  The Clerk

of Court is directed to enter judgment and close this case.

       SO ORDERED.

                                   _____
                                   ELIZABETH A. WOLFORD
                                   United States District Judge

Dated: May 19, 2020
       Rochester, New York